IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

# NO. 10-12902-GG

---

UNITED STATES OF AMERICA,

Appellee,

versus

CAREL A. PRATER

Appellant.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

APPELLANT'S REPLY BRIEF

JOFFE & JOFFE, P.A.
Attorney for Appellant
One East Broward Boulevard
Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 723-0007
Florida Bar No. 0814164

# **Table of Contents**

**Page**

Table of Contents.................................................................  i

Table of Citations...............................................................  ii

Argument:

I.      The Evidence at Trial Was Not Sufficient to Support

        Prater's Convictions of Counts One Through Eight and

        Ten Through Twelve Beyond a Reasonable Doubt…………...  1

II.     The District Court's Evidentiary Rulings Were Improper…….  7

III.    Prater has Established that the District Court Violated

        his Right to Due Process………………………………………  16

IV.     The District Court Erred in Sentencing Prater to 336

        Months in Prison………………………………………………  17

Conclusion……………………………………………………………  21

Certificate of Compliance……………………………………………  22

Certificate of Service…………………………………………………  22

i

**<u>Table of Citations</u>**

**<u>Cases</u>**                                                                                                      **<u>Page</u>**

<u>Cheek v. United States</u>, 498 U.S. 192, 111 S.Ct. 604 (1991)………..  4

<u>Delaware v. Arsdall</u>, 475 U.S. 673, 106 S.Ct. 1431 (1986)…………  12

<u>Gall v. United States</u>, 552 U.S. 38, 128 S.Ct. 586 (2007)……………  18

<u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781 (1979)……………  1

<u>Kimbrough v. United States</u>, 552 U.S. 85, 128 S.Ct. 558 (2007)……  20

<u>Koon v. United States</u>, 518 U.S. 81, 116 S.Ct. 2035 (1996)…………  20

<u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S.Ct. 1555 (1995)……………..  7

<u>Liparota v. United States</u>, 471 U.S. 419, 105 S.Ct. 2084 (1985)…….  4

<u>Olden v. Kentucky</u>, 488 U.S. 227, 109 S.Ct. 480 (1988)……………  12

<u>United States v. Adkinson</u>, 135 F.3d 1363 (11th Cir. 1998)…………  15

<u>United States v. Bonilla</u>, 579 F.3d 1233 (11th Cir. 2009)……………  21

<u>United States v. Booker</u>, 543 U.S. 220, 125 S.Ct. 738 (2005)………..  17

<u>United States v. Dickerson</u>, 403 Fed.Appx. 354 (11th Cir. 2010)…….  6

<u>United States v. Durant</u>, 545 F.2d 823 (2nd Cir. 1976)………………  17

<u>United States v. Forrest</u>, 623 F.2d 1107 (5th Cir. 1980)……………...  7

<u>United States v. Frank</u>, 599 F.3d 1221 (11th Cir. 2010)………………  10

<u>United States v. Goetz</u>, 746 F.2d 705 (11th Cir. 1984)…………..........  4

<u>United States v. Gonzalez</u>, 550 F.3d 1391 (11th Cir. 2008)…………..  20-21

**Table of Citations**
**(Continued)**

<u>**Cases**</u>                                                                        <u>**Page**</u>

<u>United States v. Gupta</u>, 463 F.3d 1182 (11th Cir. 2006)……………..  1

<u>United States v. Hands</u>, 184 F.3d 1322 (11th Cir. 1999)……………..  11

<u>United States v. Hope</u>, 901 F.2d 1013 (8th Cir. 1991)………………..  17

<u>United States v. Hubert</u>, 138 F.3d 912 (11th Cir. 1998)………………  11

<u>United States v. Kottwitz</u>, 614 F.3d 1241 (11th Cir. 2010)…………...  3

<u>United States v. Livesay</u>, 525 F.3d 1081 (11th Cir. 2008)……………  18,20

<u>United States v. McBride</u>, 511 F.3d 1293 (11th Cir. 2007)…………..  18

<u>United States v. Morris</u>, 20 F.3d 1111 (11th Cir. 1994)……………....  4

<u>United States v. Old Chief</u>, 519 U.S. 172, 117 S.Ct. 644 (1997)……..  11

<u>United States v. Pugh</u>, 513 F.3d 1179 (11th Cir. 2008)………………  18

<u>United States v. Ross</u>, 210 F.3d 916 (8th Cir. 2000)…………………  17

<u>United States v. Salman</u>, 378 F.3d 1266 (11th Cir. 2004)……………  7

<u>United States v. Sepulveda</u>, 15 F.3d 1161 (1st Cir. 1993)……………  15

<u>United States v. Sims</u>, 617 F.2d 1371 (9th Cir. 1980)………………...  17

<u>United States v. Singh</u>, 291 F.3d 756 (11th Cir. 2002)………………..  7

<u>United States v. Talley</u>, 431 F.3d 784 (11th Cir. 2005)………………  21

<u>United States v. Williams</u>, 390 F.3d 1319 (11th Cir. 2004)…………...  3-4

iii

## Table of Citations
### (Continued)

**Cases**                                                                 **Page**

United States v. Woodruff, 296 F.3d 1041 (11th Cir. 2002)………….  5


**Statutes and Other Authorities**

18 U.S.C. §3553………………………………………………………  18,19

26 U.S.C. §7206(2)……………………………………………………  4


**Federal Rules of Evidence**

Rule 404(b)………………………………………………………………  11

Rule 701……………………………………………………………………  10

## Argument

## I.

**The Evidence at Trial Was Not Sufficient to Support Prater's Convictions of Counts One Through Eight and Ten Through Twelve Beyond a Reasonable Doubt.**

In evaluating the sufficiency of the evidence, this Court must determine "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *United States v. Gupta*, 463 F.3d 1182, 1193 (11th Cir. 2006) [*quoting, Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781 (1979)]. The evidence presented against Prater as to his intent created a reasonable doubt and therefore the convictions must be vacated.

The government contends that Prater "continued advising clients not to pay their taxes and providing services to those clients after he plainly had been put on notice that his advice and services were unlawful". (Government's Brief, page 22) Again, the "notice" that the government introduced through the testimony of its own witness was that Prater was left pamphlets by Meadows during his interview of Prater. However, Meadows testified "that was my opinion" that because he left the pamphlets, Prater was on notice. (DE: 240:32) This was not evidence, but Meadows' mere opinion that the "notice" element of the charge, which the government had to prove to support the conviction on this count, was supported by

this testimony.  The other evidence that the government points out to support the conviction is the "August 2000 newspaper article, [where] Prater was on notice that his theories were questionable".  (Government's Brief, page 22)  Again, newspaper articles are just that – articles – they are not law.  In fact, newspaper articles are again mere opinions of the writer of the article.  The opinion of the government's witness or an opinion of a writer for the local newspaper does not support the argument that Prater was on notice that his actions were unlawful and therefore the element of his intent to continue to do the unlawful action was not proven beyond a reasonable doubt.  The above "evidence" failed to establish "beyond a reasonable doubt" Prater's **intent** to knowingly and willingly give false or illegal information to his clients.  (DE: 239:234)

Even the fact that an injunction was entered merely supports a finding that at the time of the entry of the injunction there was sufficient evidence for the injunction – not that Prater should be convicted of said alleged action several years after the entry of the injunction.  Furthermore, there was no evidence that clearly showed that Prater did in fact violate the injunction.

Even the court's statement that "[w]ell, just for future reference, when law enforcement starts showing up with search warrants, you should assume that they think you are doing something that is illegal" does not support a finding that Prater's defense as to his intent is "untenable".  After all, if law enforcement

showing up with a search warrant was in fact a true measurement of a "wrong", then we would not have the protection of the Fourth Amendment because there would be no need to protect against illegal searches and seizures. Our founding fathers realized this and that is why we have said protection. So, for the government to quote this as a basis to support its argument is in itself "untenable".

The government further argues that the evidence introduced at trial clearly showed that Prater (1) willfully and knowingly had aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained material statements that the defendant knew to be false. *United States v. Kottwitz*, 614 F.3d 1241, 1269 (11th Cir. 2010).

The government argues that the filing of the tax return by "RR" clearly supports the above elements. But, as was pointed out by Prater in his brief when he referenced Phillips' testimony, there was nothing introduced by the government to support a finding that either return – that of "RR" or Phillips – was false or fraudulent. (DE: 240:155) As such, there was no evidence that Prater did file false or fraudulent returns, whether for "RR" or Phillips, and clearly nothing that was introduced about either "RR" or Phillips' returns proved that Prater had the specific intent to file a false or fraudulent return. *See generally, United States v. Williams*, 390 F.3d 1319 (11th Cir. 2004); *United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994).

The government argues that Prater's good faith defense is not supported by the facts or law; yet, the case law states that it is a complete defense to the crime of filing a false tax return that the defendant made a good faith mistake in the return or had a good faith belief that the tax laws had been satisfied even if the belief is not reasonable. *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604 (1991); *United States v. Morris*, 20 F.3d 1111 (11th Cir 1994).[1] Even ignorance of the law was upheld as a defense in *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084 (1985). In summation, Prater did not intend to commit a crime. As such, the evidence was and is not sufficient to support the verdict of guilty as to the count of aiding and assisting in the filing of false tax returns in violation of 26 U.S.C. §7206(2) as charged.

In order to prove that Prater is guilty of failure to file his tax returns as charged, the government must prove the following: "the taxpayer was required to file an income tax return; the taxpayer failed to file such return; and the taxpayer's violation was willful". *United States v. Goetz*, 746 F.2d 705, 706 (11th Cir. 1984).

Although the government may have shown income earned by Prater during the years in question, this alone does not support a finding that "the taxpayer's

---

[1] The government cites to *Cheek* for the proposition that "[a] defendant's disagreement with the philosophic or legal underpinnings of the Internal Revenue Code does not constitute a good-faith mistake". (Government's Brief, page 23) But, it still holds true that a "good faith" claim is supported by the law and by the facts of this case.

violation was willful".  The government, throughout its brief, minimizes Prater's argument about his willfulness and intent; however, it is an element of the crimes he was charged with.  Again, said required element was not supported by the evidence or the testimony at trial.  Prater admits that the evidence showed income being received by various entities of Prater's, but the evidence does not show whether said income was exempt, taxable or earned as a result of other people and/or entities.  Just because there is income does not always mean that there is a duty to pay taxes on it.  Accordingly, the relief sought by Prater should be granted.

Prater reiterates his previous argument that the law requires that a criminal act be performed voluntarily and intentionally and not because of a mistake or accident.  *United States v. Woodruff*, 296 F.3d 1041 (11th Cir 2002).  As to the conviction against Prater for the charges of criminal contempt, it is quite evident that the jury viewed the evidence and testimony in a vacuum.  The jury failed to consider the testimony of Cortier where he testified that he found several consents from clients authorizing monies to be used for Prater's defense fund (DE: 241:85-86) and that Prater did in fact turn away clients due to the injunction.  Furthermore, had Prater been allowed to argue his "entrapment" defense, it would have been clear that the "pitches" he made to the agents were in fact coerced and orchestrated by the agents.  Even without the issue of "entrapment" being argued, it was quite clear that the scenes the government used to "prove" its case were in fact

orchestrated by the agents and not by Prater.  As such, there should have been reasonable doubt as to the charge of criminal contempt because the evidence that was presented to prove that Prater was in violation of the injunction was "opinions" rendered by the government's witnesses, which is speculative at best. (DE: 234:218)  This Court must find that the government failed to meet its burden and vacate Prater's conviction.

In order to uphold Prater's conviction as to Counts 10, 11 and 12, the government's evidence had to show beyond a reasonable doubt that Prater knowingly had made a false and material declaration or statement while under oath and that Prater knew the statement was false.  *United States v. Dickerson*, 403 Fed.Appx. 354 (11th Cir. 2010).

The government attempts to circumvent Prater's argument regarding the fact that it only submitted parts of the transcript from Prater's testimony before the grand jury by pointing out that he failed to "object on completeness grounds". (DE: 241:88; 239:174, 176-177)  Although this is true, said fact should not be the basis for this Court to ignore Prater's argument, especially if the conviction was entered unconstitutionally and/or in violation of Prater's due process rights because he failed to raise the proper objection.

In *United States v. Forrest*, 623 F.2d 1107, 1110 (5th Cir. 1980),  the court held that: "[i]n order to prove that a defendant committed perjury, the government

must prove that his statements were false and that he did not believe them to be true". *See, United States v. Singh*, 291 F.3d 756 (11th Cir. 2002) (testimony must be given with willful intent to provide false testimony and not as a result of mistake, confusion or faulty memory). Throughout the trial, Prater was trying to argue his defense, to-wit: he did not have the intent to commit the crimes as charged, but was prevented from doing same by the court. Therefore, there was evidence to support a finding of not guilty and as such the government failed to meet its burden. Accordingly, the district court should have granted a judgment of acquittal under Rule 29(b). *United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004); *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555 (1995).

## II.

### The District Court's Evidentiary Rulings Were Improper.

It is interesting to note that the government attacks Prater's arguments not on the substance of the arguments, but on how same was presented. And, what is also interesting is that the government itself presents its arguments also using string cites and "scatter-shot, conclusory assertions" (yet, the government was not held to the type-volume limitation as was Prater). (Government's Brief, pages 31, 32, 41, 42)  In any event, it is quite evident that Prater's arguments support a finding that the district court's actions were prejudicial to Prater.

Prater acknowledges that he may have needed to be admonish by the court, but said admonishment should have been done properly and not to prejudice or harm Prater in the eyes of the jury. Whether said "admonishments" were accurate and/or warranted is not relevant if the prejudice of doing same outweighed the necessity for same.

The government, it its brief, attempts to dismiss Prater's argument regarding how the court would not allow Prater to even object to the introduction of the evidence before it was admitted. Previously, the government argued that because Prater did not properly object to certain matters that this Court can now only review the objection for "plain error". Now, the government is arguing just the opposite. Again, this Court must consider the fact that Prater was *pro se* in deciding this issue. But, no matter what, the district court erred in allowing the introduction of evidence without allowing Prater to object.

The government continues to argue that Prater failed to object to the introduction of the information regarding his life insurance and therefore "this court should review this argument only for plain error"; yet, when Prater points out that evidence was introduced without him being allowed to object, the government wants this Court to find that it is not plain error. Again, it is quite clear that the actions of the district court as to the introduction of evidence was prejudicial and is plain error. The government also argues that Prater's argument as to the tape-

recorded conversation between Prater and Bishop should not be considered because "Prater never objected to the adequacy of the predicate". (Government's Brief, page 34)  Again, whether Prater objected or not, the introduction was in fact "error".

The government's argument that what Prater was receiving from Social Security from 2000 through 2005 was introduced in order to "corroborate the testimony of Prater's ex-girlfriend, Margaret Tilus, is not supported as the government argues. (Government's Brief, page 33)  Margaret Tilus testified that she dated Prater for three months in the beginning of January, 2005.  (DE: 239:197-199)  She said nothing about the years 2000 through 2004.  And, she also testified that Prater lived in a one bedroom apartment with a kitchen on the small side and that it was not fancy and it was not opulent at all.  (*Id*. at 200)  How then does introducing what Prater received from Social Security prior to Tilus even knowing Prater support Tilus' testimony?  Therefore, there was no relevancy to introducing the evidence.  Prater properly objected and cited the correct reason for the objection, but same was "overruled".  Again, the only reason to introduce same was to confuse the jury and possibly prejudice the appellant.[2]  The district court's

---

[2] It should be pointed out, however, after the testimony was introduced and the objection "overruled", the court asked the government – after it continued to introduce information about Prater's Social Security – "well, you have a relevance objection, you want to be heard on it?"  This was done after the information was

denial of Prater's objection "affected the defendant's substantial rights". *United States v. Frank*, 599 F.3d 1221 (11th Cir. 2010). The district court's ruling as to this matter was an abuse of discretion.

Also the court allowed cumulative evidence to be introduced which also swayed and influenced the jury (DE: 240:42-43) and allowed "opinions" of witnesses to be introduced to show Prater's intent:

> Q:    Sir, at the conclusion of that conversation, based upon what Mr. Prater said, what did you anticipate that Mr. Prater was going to do?
>
> A:    I anticipated that he was going to make those deposits, as he said in four different locations. (DE: 237:79)

The government argues that said evidence is admissible pursuant to Federal Rule of Evidence 701; however, how was said opinion "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue" as is required under Rule 701? Said testimony should have been stricken – but was not.

As to the introduction of the Texas injunction, the government contends that

introduced to the jury and no instruction to disregard same was made. (DE: 241:73)

the injunction was not evidence of "other crimes, wrongs or acts" and therefore was not inadmissible under Federal Rule of Evidence 404(b); yet, how can a Texas injunction have anything to do with actions allegedly done by Prater in Florida? The government argues that the injunction is admissible because it stems from the same "crimes, wrongs or acts".  The injunction was from Texas and the charges in this case stem from Prater's actions in Florida.  So, how could it be the same "crimes, wrongs or acts"?  The government is making a conclusory argument that cannot be supported by the facts.  Furthermore, the fact that the district court allowed the "admissions" made by Prater in the Texas injunction not only to be admitted, but to be published to the jury was highly prejudicial to Prater and clearly was plain error.  (DE: 234:163-171)  *United States v. Old Chief*, 519 U.S. 172, 117 S.Ct. 644 (1997); *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999); *United States v. Hubert*, 138 F.3d 912 (11th Cir. 1998) (evidence of prior drug dealing inadmissible under Rule 404(b) because it proved defendant's criminal disposition).

Prater clearly has shown in his brief how the district court restricted his cross-examination and his ability to put on a valid defense.  Prater actually cites to the parts in the transcript and shows how said restriction prevented him from having a fair and impartial trial.  The United States Supreme Court has stated that "trial judges retain wide latitude … to impose reasonable limits on cross

examination". *Delaware v. Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435 (1986). And, readily reverse when an improper restriction placed on cross-examination to demonstrate bias of a victim is foreclosed. *Olden v. Kentucky*, 488 U.S. 227, 109 S.Ct. 480 (1988). Prater was precluded from cross examining witnesses concerning his defense of entrapment in connection with the ongoing investigation that the FBI was instituting against Prater and that was used as evidence of him violating the injunction and the claim for structuring.[3] (DE: 233:166; 238:45) Prater was restricted during his cross-examination of Graham/Bibeau. (DE: 234:179-180) And, Prater was not allowed to ask Cortier about the IRS handbook to support his defense. In fact, Prater was asked to sit down and was not allowed any further cross-examination. (DE: 241:102) Further evidence of the court restricting Prater's cross-examination of the government's witnesses was when he wanted to cross examine his former wife about her possible false testimony in the grand jury and what she was to testify about at the trial. (DE: 234:17-18; 238:206)

In addition, Prater was restricted by the court in what he could and could not argue regarding his defenses: "And I must insist and I do insist, and I will enforce that insistence that you not engage in the undertaking to discuss these, what are

---

[3] Prater had filed a motion concerning the defense of entrapment. The court entered an order stating that the issue of entrapment will be submitted to the jury. (DE: 157) Said defense was never submitted to the jury.

political matters - I'm just gonna describe them in generic terms as political matters, that is the group of matters that I listed a moment ago that are forbidden." (DE: 234:29)  The court again restricted his cross examination by stating: "[a]nd I'm not gonna let you argue with this witness these arcane, substanceless positions. You may be able to sell this to some person in public, but you are not going to advance this legal theory in this courtroom."  (DE: 240:84)  The court even required Prater to sit down and not complete his cross-examination when Prater was asking a witness "where is the law that says that I was breaking the law?". (DE: 240:115)  Again, the court restricted Prater in trying to introduce evidence concerning his publications which supported his defenses.  The court basically forbid same, claiming it was not relevant.  (DE: 240:81)  Prater has a constitutional right to a fair and impartial trial.  Said statements by the district court clearly support a finding by this Court that the district court was not impartial and as such Prater did not receive a fair trial.  Whether the district court agreed with Prater or not did not give the district court the right to restrict Prater's defense.  This clearly was an abuse of the district court's discretion.

The court, even in Prater's opening statement, forbid him and admonished him as to what he could and could not say: "[t]he purpose of our being here is not to air views about wisdom or lawfulness of the federal income tax … these views

are not an admissible subject here…. If you go outside that, Mr. Prater, I'm going to intrude and stop you." (DE: 234:75-76)

Notwithstanding the district court's apparent dislike of Prater, the government itself was also guilty of misconduct throughout the trial. The government is trying to make light of their comments and innuendos by claiming that they were nothing more that "reasonable characterizations of what the United States expected the evidence to show". (Government's Brief, page 44) However, when you consider the power that the government has, said comments are clearly more than "characterizations". Again, statements such as "Mr. Prater sold a system that he **falsely claimed** could get people out of the tax system" and that he was a "defier of the law" carry great weight coming from the government. (DE: 234:48-49) It is highly likely that said "characterizations" clouded the jury's opinion and should not have been allowed.

Again, stating that Prater lied intentionally and that "the Judge had told him his positions were frivolous" in front of the jury (DE: 242:118-119) was highly prejudicial to Prater and unprofessional on the part of the government. Said statements were not characterizations, but clearly evidence of misconduct on the part of the government.

In addition, the actions of the court itself in characterizing Prater as a liar, cheat and criminal – even if used as an example – in front of the jury and not at

sidebar – also was prejudicial and inflammatory.  (DE: 238:20)  Even if the court thought it was making a hypothetical example – it came from the court.  It is unclear if it affected the jury or not – but this Court must err on the side of caution in order to protect the due process rights of Prater.

The **cumulative error doctrine** provides that the aggregation of non-reversible errors, *i.e.* plain error failing to necessitate reversal and harmless error, can yield a denial of the constitutional right to a fair trial, which calls for reversal. In this case, the improperly admitted evidence, the restrictions on Prater's right to present his defense, the government's misconduct and other errors discussed above were prejudicial and infected the entire trial thus violating Prater's right to a fair trial.  *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998).  "The cumulative prejudicial effect of many errors may be greater than the sum of prejudice caused by each individual error."  *United States v. Sepulveda*, 15 F.3d 1161, 1195-96 (1st Cir. 1993).  "The total effect of errors on the trial will depend, among other things, 'on the nature and number of errors committed, the interrelationship, if any, and combined effect, how the court dealt with the errors as they arose…', strength of the government's case and length of trial."  (*Id.* at 1196)

## III.

### Prater has Established that the District Court Violated his Right to Due Process.

Prater reiterates that his due process rights were violated throughout the trial. The government contends that because Prater "chose" to proceed *pro se* that there was no "right to access to a law library". However, the government fails to point out that Prater did not choose to proceed *pro se* – he had no choice once the district court denied Prater's motions to appoint new counsel and/or co-counsel. (DE: 50) Even when the court ordered Prater to proceed *pro se*, Prater again asked for co-counsel other than the attorney currently appointed and again that request was denied by the court. (DE: 65; 70) The court even denied Prater's request for access to the law library and the internet so that he in fact could represent himself properly, just as all of his other *pro se* motions were denied. Said denials caused great prejudice and harm to Prater and his ability to prepare for trial. (DE: 72; 86; 96; 114; 133; 157; 239:52-53) It is quite obvious that because Prater was *pro se*, it was his responsibility and obligation to prepare himself for trial including the research required to properly defend the case, the drafting of motions, subpoenas, questions and jury instructions. As such, Prater needed access to the law library, the assistance of law clerks and the financial resources to draft the pleadings, make the copies, file same with the court and deliver copies to opposing counsel. This

Court must find that the actions of the district court in denying Prater's request did in fact prevent him from having a fair trial. Prater continually requested said financial assistance and support and same was denied with the court responding – you wanted to represent yourself and/or something to that affect. (DE: 239:52-53) Therefore, Prater assigns as error the erroneous denial of much needed assistance and financial support. *United States v. Sims*, 617 F.2d 1371 (9th Cir. 1980) ("the government's duty to provide an indigent criminal defendant with the essential tools of trial defense is of both a constitutional and statutory dimension"); *United States v. Durant*, 545 F.2d 823, 827 (2nd Cir. 1976); *United States v. Ross*, 210 F.3d 916, 921 (8th Cir. 2000); *United States v. Hope*, 901 F.2d 1013, 1022, n. 13 (8th Cir. 1991).

Prater is entitled to relief as he has established, both in his initial brief and here, that the denial of his requests for access to the law library and the internet and the need for necessary and viable resources in order to prepare his defense prejudiced Prater in his right to a fair trial.

## IV.

## The District Court Erred in Sentencing Prater to 336 Months in Prison.

Prater argues that in sentencing him after *United States v. Booker*, 543 U.S. 220, 243-68, 125 S.Ct. 738, 755-69 (2005), pursuant to an advisory application of

the United States Sentencing Guidelines, the district court imposed an unreasonable sentence. The district court's failure to consider the granting of a variance due to Prater's age is unreasonable when considering how the sentencing procedures have evolved since the Supreme Court's decisions in *United States v. Booker* and *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007). *See, United States v. Livesay*, 525 F.3d 1081, 1089-90 (11th Cir. 2008) (summarizing current sentencing procedures in Eleventh Circuit); *United States v. Pugh*, 513 F.3d 1179, 1188-91 (11th Cir. 2008).

Although Prater did not properly object to the guidelines or the facts as stated in the presentence investigation report, Prater did attempt to argue his position as to what he believed to be a reasonable sentence considering the factors of Section 3553 and his age. It is Prater's position that the district court failed to consider all of the 18 U.S.C. §3553(a) factors to determine whether they support the sentence imposed. *Livesay* at 1089-90 [*quoting, Gall* and *Pugh*].

The sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in Section 3553(a)(2)(A)-(D). *See, e.g., United States v. McBride*, 511 F.3d 1293, 1296-97 (11th Cir. 2007). The Court "***may not presume that the [advisory] guidelines range is reasonable***". *Gall*, 128 S.Ct. at 596-97 (emphasis added). Thus, after making an "individualized assessment" of the Section 3553(a) factors based on the facts presented, the

sentencing court has the power to grant a variance from the advisory guidelines range to whatever extent the court deems warranted by the facts of each defendant. *Gall*, 128 S.Ct. at 595-97; *Livesay*, 525 F.3d at 1090; *McBride*, 511 F.3d at 1297-98.  The government argues that Prater's sentence is reasonable because the sentence was "middle of the guideline range" and therefore should be upheld.  As stated in *Gall*, the court "may not presume that the [advisory] guidelines range is reasonable".  *Gall*, 128 S.Ct. at 596-97.  Therefore, the government's argument fails on its face.

Prater further argues that the strict application of the advisory sentencing guidelines in this case produced a sentence greater than necessary for punishment under Section 3553(a).  The court failed to consider the individual history and characteristics of Prater and merely focused on the idea of punishing Prater for his crimes.  Had the court considered the factors properly, the court would have found that Prater's age and unique characteristics supported a sentence beneath the advisory guidelines range and not in the "middle of the guidelines range".  The statutory factors set forth in 18 U.S.C. §3553(a) weighed strongly in favor of a sentence outside of and below the advisory sentencing guidelines – yet, the court could not focus on anything but its disdain for Prater and to punish him, which said

disdain can be seen throughout the trial and at the sentencing.[4]  (DE: 234:29; 240:84; 243:27-31)  A variance would have been justified and same would have been affirmed by the appellate court as being reasonable.  *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007).

Because the district court failed to sentence Prater to a sentence that was just and reasonable under Section 3553(a), Prater contends that he was denied his right to due process of law and a reasonable sentence pursuant to the dictates of *Booker* and *Gall*.  This final sentence, in its entirety, was violative of Section 3553(a) requirements and just because it was within the guidelines range, it is not presumed to be "reasonable".  Prater's sentence did not promote the administration of justice nor law; all it provided was "punishment".  However, it did not provide just punishment considering the individual factors of Prater's history and characteristics nor the individual facts of the crime itself and his involvement. *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035 (1996); *United States v. Livesay*, 525 F.3d 1081, 1090 (11th Cir. 2008).

"The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in §3553(a) support the sentence in question."  *United States v. Gonzalez*, 550 F.3d

---

[4] It should also be pointed out that Prater attempted to have the judge recuse himself because he was not impartial as to Prater.  (DE: 32)

1391, 1324 (11th Cir. 2008). The review focuses on whether the sentence ordered fails to achieve the purposes of sentencing as stated in Section 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). In ordering 336 months incarceration for Prater, the district court only considered the government's request for punishment and not the "totality of the circumstances" and the factors of Section 3553(a). Accordingly, the sentence must be reversed. *See also, United States v. Bonilla*, 579 F.3d 1233 (11th Cir. 2009).

## <u>Conclusion</u>

Based upon the foregoing and Prater's initial brief, this Court should reverse Prater's convictions on all counts and remand for a new trial. Finally, this Court should vacate Prater's sentence and remand for re-sentencing.

Respectfully submitted,

JOFFE & JOFFE, P.A.
Attorney for Appellant
One East Broward Boulevard
Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 723-0007
Facsimile: (954) 723-0033


By_____
    DAVID J. JOFFE, ESQUIRE
    Florida Bar No. 0814164

## **Certificate of Compliance**

I HEREBY CERTIFY that this reply brief contains 5,123 words and therefore complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B)(ii), excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

This reply brief also complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements for Fed.R.App.P. 32(a)(6) because this reply brief has been prepared in a proportionally based typeface using Microsoft Word, 14-point Times New Roman.

_____
DAVID J. JOFFE, ESQUIRE

## **Certificate of Service**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this  **16th** day of September, 2011, to DAVID RHODES, ESQUIRE, Assistant United States Attorney, Chief, Appellate Division, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602.

_____
DAVID J. JOFFE, ESQUIRE