IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

## NO. 10-12909

---

UNITED STATES OF AMERICA,

Appellee,

versus

CAREL A. PRATER,

Appellant.

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

JAN 1 2 2012

JOHN LEY
CLERK

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

---

PETITION FOR REHEARING *EN BANC* OR FOR
PANEL REHEARING BY APPELLANT, CAREL A. PRATER

JOFFE & JOFFE, P.A.
Attorney for Appellant
One East Broward Boulevard
Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 723-0007
Florida Bar No. 0814164

THIS CASE IS ENTITLED TO PREFERENCE
(CRIMINAL APPEAL)

**United States v. Carel A. Prater, Case No. 10-12909**

## Certificate of Interested Persons

Undersigned counsel for the Appellant hereby certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case:

Steven D. Grimberg, Esquire

David J. Joffe, Esquire

Honorable Steven D. Merryday

Robert Monk, Esquire

Michelle M. Petersen, Esquire

Carel A. Prater

David Rhodes, Esquire

Patricia A. Willing, Esquire

Honorable Thomas G. Wilson

C-1 of 1

## Statement of Counsel

The undersigned counsel of record expresses a belief based on reasonable and studied professional judgment that this appeal involves the following questions of exceptional or unusual importance:

(I)    Whether the Court's Opinion Ignores the Merits of Prater's Argument that the Substantive Convictions were Unsupported by the Evidence Presented at Trial.

(II)    Whether the Court's Opinion Ignores the Merits of Prater's Argument that the District Court Erred in Numerous Instances in Permitting the Government to Introduce Inadmissible or Irrelevant Evidence that Prejudicially Impacted the Jury Verdict.

(III)   Whether the Court's Opinion Ignores the Merits of Prater's Arguments Regarding the Sentence Imposed by the District Court Being Both Substantively and Procedurally Unreasonable.

I express a belief, based on reasoned and studied professional judgment, that the panel decision is either not relevant to or inconsistent with the following decisions of the Supreme Court and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court:

*United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310 (1995);

i

*Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655 (1994);

*United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005);

*Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007).

DAVID J. JOFFE, ESQUIRE
Attorney for Appellant

ii

## Table of Contents

| | Page |
|---|---|
| Certificate of Interested Persons | C-1 |
| Statement of Counsel | i |
| Table of Contents | iii |
| Table of Citations | iv |
| Statement of the Issues | 1 |

Statement of the Case:

    Course of Proceedings, Disposition in the District

    Court and Statement of the Facts Necessary to

    Argument................................................................. 1

| Argument and Citation of Authority | 6 |
| Conclusion | 15 |
| Certificate of Service | 16 |

Appendix:

    United States v. Carel A. Prater, No: 10-12909

    (11th Circuit, Dec. 22, 2011) (unpublished)........................ A

## Table of Citations

**Cases**                                                            **Page**

Cheek v. United States, 498 U.S. 192, 111 S.Ct. 604 (1991)........... 10

Gall v. United States, 552 U.S. 38, 128 S.Ct. 586 (2007).............. ii,14

Koon v. United States, 518 U.S. 81, 116 S.Ct. 2035 (1996)............ 15

Ratzlaf v. United States, 510 U.S. 135, 114 S.Ct. 655 (1994).......... ii,11

Rita v. United States, 551 U.S. 338, 127 S.Ct. 2456 (2007)............ 14

United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005).......... ii,14

United States v. Caraballo, 595 F.3d 1214 (11th Cir. 2010)............. 12

United States v. Correa-Arroyave, 721 F.2d 792 (11th Cir. 1983)...... 13

United States v. De La Mata, 266 F.3d 1275 (11th Cir. 2001)........... 11

United States v. Drury, 396 F.3d 1303 (11th Cir. 2005)................. 12

United States v. Forrest, 623 F.2d 1107 (5th Cir. 1980).................. 9

United States v. Gaudin, 515 U.S. 506, 115 S.Ct. 2310 (1995)........ i,7

United States v. Goetz, 746 F.2d 705 (11th Cir. 1984).................. 8,9

United States v. Hawkins, 905 F.2d 1489 (11th Cir. 1990)............. 12

United States v. Jacoby, 955 F.2d 1527 (11th Cir. 1992)............... 13

United States v. Livesay, 525 F.3d 1081 (11th Cir. 2008).............. 15

United States v. Massey, 89 F.3d 1443 (11th Cir. 1996)................ 12-13

iv

## Table of Citations
### (Continued)

| Cases | Page |
|---|---|
| United States v. Maxwell, 579 F.3d 1282 (11th Cir. 2009).............. | 8 |
| United States v. Merrill, 513 F.3d 1293 (11th Cir. 2008)................ | 13 |
| United States v. Mogel, 956 F.2d 1555 (11th Cir. 1992)................ | 14 |
| United States v. Morris, 20 F.3d 1111 (11th Cir. 1994)................. | 9,10 |
| United States v. Owens, 103 F.3d 953 (11th Cir. 1997)................. | 10 |
| United States v. Rodriguez, 765 F.2d 1546 (11th Cir. 1985)............ | 13 |
| United States v. Shotts, 145 F.3d 1289 (11th Cir. 1998)................ | 9,10 |
| United States v. Williams, 390 F.3d 1319 (11th Cir. 2004).............. | 9 |
| United States v. Woodruff, 296 F.3d 1041 (11th Cir. 2002)............. | 7 |
| United States v. Yeager, 331 F.3d 1216 (11th Cir. 2003)............... | 12 |

**Statutes and Other Authorities**

| | |
|---|---|
| 18 U.S.C. Section 3553.................................................. | 14 |

**Federal Sentencing Guidelines**

| | |
|---|---|
| Section 3B1.1............................................................. | 6 |
| Section 3C1.1............................................................. | 6 |
| Section 2J1.3............................................................. | 6 |
| Section 2T1.4............................................................. | 6 |
| Section 2T4.1............................................................. | 6 |

v

## Statement of the Issues

(I)    Whether the Court's Opinion Ignores the Merits of Prater's Argument that the Substantive Convictions were Unsupported by the Evidence Presented at Trial.

(II)    Whether the Court's Opinion Ignores the Merits of Prater's Argument that the District Court Erred in Numerous Instances in Permitting the Government to Introduce Inadmissible or Irrelevant Evidence that Prejudicially Impacted the Jury Verdict.

(III)    Whether the Court's Opinion Ignores the Merits of Prater's Arguments Regarding the Sentence Imposed by the District Court Being Both Substantively and Procedurally Unreasonable.

## Statement of the Case

**Course of Proceedings, Disposition in the District Court and Statement of the Facts Necessary to Argument:**

On January 28, 2009, a federal grand jury indicted Prater for corrupt interference with Internal Revenue laws, aiding or assisting in the filing of false tax returns, failure to file a tax return for 2002 and 2003, criminal contempt, structuring transactions to avoid reporting requirements and false declarations before the grand jury. (DE: 5)

The jury trial began on February 22, 2010. The trial ended on March 9,

1

2010, and the jury returned guilty verdicts against Prater on all counts. (DE: 199)

The government called Anne Bibeau, a former attorney for the United States Department of Justice, Tax Division, and one of the attorneys who handled the civil injunction against Prater. (DE: 234:125-129) Bibeau acknowledged that Prater was allowed to continue receiving monies from his clients for his legal representation if they so consented to same. (*Id.* at 180-181) She admitted that d/b/a's and LLC's were not illegal and that she did not believe the letter they sent to Prater's clients was threatening although it advised them they could face civil and criminal charges. (*Id.* at 182-183)

The government called Dennis Michael O'Leary, the special master appointed by the district judge when the preliminary injunction was entered against Prater. (*Id.* at 202-206) He testified that he did not subpoena any banks for Prater's records. (*Id.* at 208) O'Leary admitted that there was no law that required one to keep records. (*Id.* at 225) O'Leary also acknowledged that Prater had a lot of clients and that he was allowed to have a legal defense fund. (*Id.* at 226, 229)

The government called John Osa, Special Agent with the FBI in Miami, Florida. (DE: 237:10-11) He was involved with an undercover operation that started in the fall of 2002 to find a money laundering operation. Prater and several other subjects, approximately seven or eight individuals and then an additional five or six, were part of the investigation. (*Id.*) Osa testified that he was told by Prater

2

of the injunction against him. (*Id.* at 21-22)

During the meeting, Osa had brought another agent who was posing as a person who needed tax advice and wanted to speak to Prater about same. Prater, however, advised that he was not supposed to give advice. (*Id.* at 34) Osa also admitted that he was told about Prater's legal defense fund – and that he had no knowledge if the money was gifts or donations for his defense. (*Id.* at 12-13) Osa admitted that he was not aware that Prater was merely trying to protect his legal defense fund when he said "hide". (*Id.* at 19) Osa also admitted that Prater told him that he had sent letters out to collect money from clients for his defense and that Osa had no knowledge of the fees that Prater did charge his clients. (*Id.* at 22) Osa admitted that he lied to Prater, but that he was not lying now because he was under oath and was not undercover. (*Id.* at 24-25)

The prosecution presented testimony concerning the perjury counts in the superseding indictment by introducing, over Prater's objections, government's exhibits 18 and 34, which were the "transcript of an excerpt of testimony of Carl [sic] Prater for the Grand Jury on October 1, 2008". (DE: 238:97-103) The government maintained that appellant's perjury to the grand jury as charged in Counts Ten, Eleven and Twelve was proven by the introduction of the transcripts which were read into the record.

The government then called Nancy Montgomery-Ware, a client that

3

admitted she volunteered to be there for closure.    She also admitted she was making over a half a million dollars a year in income and that she was testifying in order to get some consideration. (*Id*. at 229-230)

The government then called Lana Sue Chadwick, another alleged client of Prater, who admitted she found out about the seminar in the paper and that Prater was not trying to hide anything. (DE: 239:31) She admitted that Prater never said anything to make her believe that Prater "was knowingly and willingly leading you wrong or giving you false or illegal information...". (*Id*. at 34)    Chadwick admitted that Prater did not pressure her or coerce her into becoming a client. (*Id*. at 41)

The government also called Wallace Bishop, another client of Prater, who also testified about the seminars and what was said and that he thought Prater to be legit because "nobody has stopped him from holding it again [seminars]". (*Id*. at 89-94) Bishop admitted that Prater was not hiding anything from the IRS and that he was surprised when there were no IRS agents at the seminar. (*Id*. at 131) Bishop also admitted that he had not filed prior to meeting with Prater and that he owed back taxes and was on a payment plan. (*Id*. at 140-142)

The government called their next witness, Norm C. Meadows, a Special Agent for the IRS, Criminal Investigations, and the lead investigator in the investigation of Prater. (DE: 240:5-6) Meadows admitted that Prater took out

4

newspaper advertisements and invited the IRS to attend the seminars and that the IRS did attend some of the seminars. (*Id.* at 92-93) He also admitted that Prater sent "various types of correspondence". (*Id.* at 95-96)

The government then called James Cortier, a Special Agent with IRS, Criminal Investigations. (DE: 241:41-43) Cortier testified that his investigation and the documents show that "[a]t the end of 2002 the preliminary injunction was put into place, at which time I think the 2003 bank deposits show that business dropped". (*Id.* at 54-55) He further testified that the basis for the compilation for Prater's income for 2002 and 2003 was to "get above the threshold to show that he was required to file". (*Id.* at 62) He also testified that in doing his income summaries that he did not take into consideration Prater's expenses. (*Id.* at 79-80) Cortier admitted he did not look at Prater's expenses although he admitted that he knew Prater had expenses. (*Id.* at 91-95)

The government rested and Prater verbally moved for a judgment of acquittal and dismissal of all charges "based on that the government, they have not proven all material elements of the charges" and Prater also renewed all previous motions that had been denied. The court ruled that "I'm satisfied that the United States has presented sufficient evidence with respect to each count to satisfy the demands of Rule 29, so that motion is denied" and the court denied all previous motions as well. (DE: 241:109-111) The defense did not put on any evidence or

testimony and rested. (*Id.* at 144)

The probation officer who prepared Prater's PSI set his base offense level at 26, pursuant to U.S.S.G. §2T4.1(k). (PSI: 32) Prater received several enhancements for specific offense characteristics, to-wit: two levels, pursuant to U.S.S.G. §2T1.4(b)(1) (PSI: 33); two levels, pursuant to U.S.S.G. §2T1.4(b)(2) (PSI: 34); four levels, pursuant to U.S.S.G. §3B1.1(a) (PSI: 36); and two levels, pursuant to U.S.S.G. §2J1.3 and §3C1.1. (PSI: 37) The total offense level was 36, the criminal history category was V and the presumptive guideline imprisonment range was 292 to 365 months. (PSI: 40; 54; 99)

Prater filed his written objections wherein he sought a departure and/or variance due to his age, family circumstances, education, physical disabilities, mental health facts, etc. (Addendum to PSI) On June 21, 2010, the district court sentenced Prater to 336 months incarceration. (DE: 219; 243) Appellant timely appealed. (DE: 220)

On December 22, 2011, this Court issued a 10 page Opinion affirming Prater's convictions and sentences.

<u>**Argument and Citation of Authority**</u>

**I.**

**The Court's Opinion Ignores the Merits of Prater's Argument that the Substantive Convictions were Unsupported by the**

6

### Evidence Presented at Trial.

This Court upheld Prater's convictions because it found that "Prater interfered corruptly with the laws of the Revenue Service and committed criminal contempt when he continued to solicit and perform services for clientele despite admonitions from the Service and others about the illegality of his tax avoidance scheme". In support of that finding, the Court concludes that the testimony presented showed "Prater was compensated for counseling and filing fraudulent tax documents". However, the Court failed to consider the testimony of the clients regarding the fact that Prater never lied to them or hid anything from them. (DE: 238:229-231; 239:31-41, 107, 140-142) In fact, the government completely overlooks the testimony of Bishop where he admitted that he did not file tax returns prior to meeting with Prater and that he owed back taxes and was on a payment plan. (*Id.* at 140-142)

For the convictions to be upheld, the government had to prove that a criminal act had been performed voluntarily and intentionally and not because of mistake or accident. *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002). It is quite clear from the testimony of Prater's clientele that he never intended to do anything wrong. (DE: 239:34, 138) The government bears the burden of proving beyond a reasonable doubt all the elements of the crime charged. *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310 (1995). No element may be removed from

7

the jury's consideration. *United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984). Accordingly, Prater argues that the government did not meet its burden. The evidence failed to establish beyond a reasonable doubt Prater's intent to knowingly and willingly give false or illegal information to his clients. (DE: 239:234) Therefore, the jury could not "infer an intent ... from the defendant's conduct". *United States v. Maxwell*, 579 F.3d 1282, 1301 (11th Cir. 2009). And, because there was nothing for the jury to infer regarding Prater's intent, how then can this Court affirm the conviction?

The panel opinion surmises that because Prater was left pamphlets by Meadows during his interview that Prater was on notice that his actions were criminal. (DE: 240:32) The panel concludes that because news articles were introduced through Prater's former wife, that Prater "should have known" that his "tax avoidance scheme was frivolous and he would be prosecuted". Again, how could a news article – someone's opinion – be the basis for a finding of specific intent of Prater?

Furthermore, the Court totally overlooks the testimony of John Phillips who testified that Prater filed his 2000 tax return and did amended tax returns for three years. (DE: 240:148-151) Although Phillips testified that he received a letter from the IRS that the returns were rejected, he could not remember if the IRS ever told him that his returns were false or fraudulent. (*Id.* at 155) He also testified that in

8

2001, he did not believe that the information Prater sent to the IRS was false or frivolous. (*Id.* at 162)  As such, there was no evidence that Prater did file false or fraudulent returns or that he had the specific intent to do same. *See generally, United States v. Williams*, 390 F.3d 1319 (11th Cir. 2004); *United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994).  Again, how could the panel affirm the conviction without sufficient evidence to support the element of intent?

In order to prove that Prater is guilty of failing to file his tax returns as charged, the government must prove the following: "the taxpayer was required to file an income tax return; the taxpayer failed to file such return; and the taxpayer's violation was willful." *United States v. Goetz*, 746 F.2d 705, 706, (11th Cir. 1984). Again, as argued throughout the trial, the government failed to prove that Prater's failure to file said returns was willful.  Furthermore, the evidence introduced by the government that Prater was required to file an income tax return was circumstantial at best.  Self serving documents are not sufficient evidence to support a finding that Prater made money and that he therefore met the threshold and had to file a tax return. (DE: 241:41-95)

As to the perjury charge, as previously argued, Prater believed this testimony to be literally true.  *United States v. Shotts*, 145 F.3d 1289 (11th Cir. 1998) (conviction was reversed where defendant's answer was literally true); *United States v. Forrest*, 623 F.2d 1107, 1110 (5th Cir. 1980) (same).  Moreover, the

9

evidence belies this assertion because the testimony and evidence from the government's witnesses supports Prater's argument that the statements were not false and that he truly believed what he said was true. *See generally, Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604 (1991); *United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994). The evidence introduced was insufficient to support a conviction based upon a mistake of fact or of law. *United States v. Owens*, 103 F.3d 953 (11th Cir. 1997).

Prater is not turning a "blind eye to the duties imposed upon him by the Internal Revenue Code" as stated in the panel's opinion. First and foremost, the evidence belies the conviction because the testimony and evidence from the government's witnesses support Prater's argument that the statements were not false and that he truly believed what he said was true. *See generally, Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604 (1991); *United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994). Therefore, the evidence is insufficient to support a conviction. *United States v. Owens*, 103 F.3d 953 (11th Cir. 1997). Accordingly the perjury convictions should not have been affirmed under existing law because Prater did not give testimony with the "willful intent to provide false testimony and not as a result of mistake, confusion or faulty memory". *United States v. Shotts*, 145 F.3d 1289 (11th Cir. 1998) (conviction reversed where defendant's answer was literally true). The panel misconstrued the evidence as to this conviction.

10

The evidence was not sufficient for the convictions to be upheld in that the government failed to show that Prater had the specific intent to commit the crimes as charged. *Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655 (1994); *United States v. De La Mata*, 266 F.3d 1275 (11th Cir. 2001). The testimony was clear that although Prater's belief may not be "mainstream", his main intent was to help his clients avoid taxes. Accordingly, the convictions must be reversed.

## II.

**The Court's Opinion Ignores the Merits of Prater's Argument that the District Court Erred in Numerous Instances in Permitting the Government to Introduce Inadmissible or Irrelevant Evidence that Prejudicially Impacted the Jury Verdict.**

The Court, in addressing all of Prater's numerous arguments, completely failed to address Prater's argument about the prejudicial evidence allowed to be introduced against him and the actions of both the district court and the government. All of the above clearly prejudiced Prater in the eyes of the jury and prevented him from having a fair trial. To affirm the district court's evidentiary rulings because the panel found that "[t]hese limitations enabled the district court to maintain the pace of the trial" is not sufficient to affirm the denial of Prater's constitutional guarantees. In reviewing Prater's arguments in depth, it is quite clear that the trial court did in fact abuse its discretion and that said abuse was not

11

harmless, but in fact did affect Prater's substantial rights. *See, United States v. Hawkins*, 905 F.2d 1489 (11th Cir. 1990).

Evidentiary errors are grounds for reversal where "there is a reasonable likelihood that they affected the defendant's substantial rights". *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005) [*quoting, United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990)]. In the case at hand, the mere fact that the district court "acted even handedly by also limiting questioning and the admission of evidence by the government" did not protect Prater's constitutional guarantees. And, for the panel to "presume that the jury complied" with the district court's curative instruction to the jury and thus the potential prejudice was "eradicated" is an improper reason not to find reversible error. *United States v. Yeager*, 331 F.3d 1216, 1221-24 (11th Cir. 2003). The panel erred in finding that the district court did not err. *United States v. Caraballo*, 595 F.3d 1214 (11th Cir. 2010). As such, Prater's convictions must be vacated.

Furthermore, for the panel to totally ignore Prater's argument regarding Exhibit 130 and instead relying on a lay person's statement that he did "[n]ot really" object is  questionable – even considering the district court's instruction. As previously argued, because the exhibit was introduced without any back-up material to support it, there is no guarantee that the exhibit was correct and therefore lacked trustworthiness and was prejudicial to Prater. *United States v.*

12

*Massey*, 89 F.3d 1443 (11th Cir. 1996) (inadmissible if circumstances indicate lack of trustworthiness). This was reversible error.

The panel reviews allegations of prosecutorial misconduct *de novo* because they involve mixed questions of law and fact. *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008). To establish prosecutorial misconduct relating to remarks during trial, "(1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant". (*Id.* at 1307) A defendant's substantial rights are prejudicially affected when there is a reasonable probability that, "but for the remarks, the outcome of the trial would have been different". (*Id.*)

Prater has pointed out several examples of prosecutorial misconduct which was more than "merely a characterization of the evidence". *United States v. Correa-Arroyave*, 721 F.2d 792, 795 (11th Cir. 1983). Although the prosecutor may not make improper suggestions, insinuations or assertions calculated to mislead or inflame the jury's passions, *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985), he may make colorful and flamboyant remarks relating to trial evidence. *See, United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992). The statements made by the government against Prater were not "colorful and flamboyant", but blatantly prejudicial and said with the actual intent to persuade the jury.

13

## III.

**The Court's Opinion Ignores the Merits of Prater's Arguments Regarding the Sentence Imposed by the District Court Being Both Substantively and Procedurally Unreasonable.**

In *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007), the Supreme Court addressed the standard of review that appellate courts must use when either a defendant or the government appeals a sentence.  The Supreme Court held that the appellate court may, but is not required to, presume that a sentence that is within the appropriately calculated sentencing guidelines is "reasonable".  *Rita*, 127 S.Ct. at 2462.  Various factors that have prompted previous trial judges to deviate from the United States Sentencing Guidelines, clean record, public service, age, mental heath, for example, were previously factors that would not have supported a "departure" in all likelihood.  *See, United States v. Mogel*, 956 F.2d 1555 (11th Cir. 1992).

Because the district court failed to consider Prater's age, health and other personal characteristics, his sentence was not reasonable under 18 U.S.C. §3553(a) because the sentence was unreasonable.  Prater was denied his right to due process of law pursuant to the dictates of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005) and *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007).  This final sentence, in its entirety, was violative of Section 3553(a) requirements.  And,

14

just because it was within the guideline range, this Court cannot presume that the sentence was "reasonable". Prater's sentence did not promote the administration of justice nor law; all it provided was "punishment". However, it did not provide just punishment considering the individual factors of Prater's history and characteristics nor the individual facts of the crime itself and his involvement. *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035 (1996); *United States v. Livesay*, 525 F.3d 1081, 1090 (11th Cir. 2008).

### Conclusion

This Court should explicitly adopt Prater's position based upon law and equity. The panel decision does not address or clarify this question of unusual importance and Prater prays that this Court will grant his petition for rehearing *en banc* or for panel rehearing.

Respectfully submitted,

JOFFE & JOFFE, P.A.
Attorney for Appellant
One East Broward Boulevard
Suite 700
Fort Lauderdale, Florida 33301
Telephone: (954) 723-0007
Facsimile: (954) 723-0033

By
DAVID J. JOFFE, ESQUIRE
Florida Bar No. 0814164

15

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this **11**th day of **January**, 2012, to DAVID RHODES, ESQUIRE, Assistant United States Attorney, Chief, Appellate Division, 400 North Tampa Street, Suite 3200, Tampa, Florida 33602.

DAVID J. JOFFE, ESQUIRE

16

**10-12909**

David Jonathon Joffe
Joffe & Joffe, PA
1 E BROWARD BLVD STE 700
FORT LAUDERDALE, FL 33301

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 22, 2011

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 10-12909-GG
Case Style: USA v. Carel Prater
District Court Docket No: 8:08-cr-00425-SDM-TGW-1

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Jan S. Camp, GG at (404) 335-6171.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1 Ntc of Issuance of Opinion

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 10-12909
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:08-cr-00425-SDM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CAREL A. PRATER,
a.k.a. Chad Prater,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Florida

(December 22, 2011)

Before HULL, PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Carel Prater appeals his sentence of 336 months of imprisonment and his convictions for one count of interfering with the laws of the Internal Revenue Service, 26 U.S.C. § 7212(a), one count of aiding or assisting in the filing of false tax returns, id. § 7206(2), two counts of failing to file tax returns, id. § 7203, four counts of criminal contempt, 18 U.S.C. § 401(3), and three counts of making false declarations before a grand jury, id. § 1623. Prater challenges the sufficiency of the evidence, rulings about his conduct as a pro se litigant, the denial of his requests for a continuance and for additional resources, and the reasonableness of his sentence. Prater also challenges, for the first time, evidentiary rulings, alleged misconduct by the prosecution, and the effectiveness of his standby counsel. We affirm Prater's convictions and sentence, but we decline to review his argument about ineffective assistance of counsel.

Ample evidence supports Prater's convictions. Prater interfered corruptly with the laws of the Revenue Service and committed criminal contempt when he continued to solicit and perform services for clientele despite admonitions from the Service and others about the illegality of his tax avoidance scheme and a ruling of a Texas court in 2002 that his scheme was "frivolous" and that enjoined him advising or aiding persons in evading income taxes. See 26 U.S.C. § 7212(a); 18

2

U.S.C. § 401(3). The government presented testimony from Prater's former wife, Rebecca Anderson; a prosecutor, Ann Bibeau; a special master for a Texas court, Dennis O'Leary; an agent of the Federal Bureau of Investigation, John Osa; a special agent of the Service, Norm Meadows; and several former clients that, between 2002 and 2005, Prater was compensated for counseling and filing fraudulent tax documents for his clientele and that Prater disregarded the decision of the Texas court and newspaper articles, letters from the Service and his clientele, and a pamphlet from the Service warning that Prater's tax avoidance scheme was frivolous and he would be prosecuted. In October 2002, Prater counseled and assisted Robert and Evangelia Reid in filing a fraudulent tax return that failed to report any income and sought a refund of more than $9,000 dollars, but Gloria Jackson of the Service and an accountant, Frederick Lugar, testified that the Reids later met with the Service and filed an amended return stating that they owed taxes. See 26 U.S.C. § 7206(2). Prater failed to file tax returns in 2002 and 2003 although, as explained by special agent James Cortier, Prater received between $668 and $727 monthly from the Social Security Administration; Prater's bank records established that he earned over $130,000 in 2002 and over $50,000 in 2003; Prater stated on a lease application in 2002 that he earned over $200,000; and Prater reported to an insurance company in 2003 that he had an income of

3

$100,000. See id. § 7203. Prater also testified falsely before the grand jury that he had not advised others to or attempted personally to hide assets from the Revenue Service and that he had not continued to operate his business after issuance of the injunction or concealed those operations from O'Leary, who was responsible for monitoring Prater's compliance with the injunction. See 18 U.S.C. § 1623(a). Prater divulged his plan to evade the injunction to Agent Osa, and Prater opened a bank account in the name of Osa's fictitious business, Texas Carribe, in which Prater deposited thousands of dollars for services that he had performed in violation of the injunction, including advising his wife to conceal assets and Wallace Bishop to quitclaim property to avoid paying taxes. Prater argues that he acted in good faith and he did not intend to defraud the Service, but the evidence supports the jury's "resolution of [this] factual issue[]." United States v. Lankford, 955 F.2d 1545, 1560 (11th Cir. 1992). Prater admitted as true allegations that he had engaged in "false, misleading, and deceptive acts and practices" in Texas; Prater admitted violating the injunction to Osa; Prater plotted with Anderson and Osa to conceal assets from the Service; and Prater ignored warnings from the Service and numerous clients that his tax avoidance scheme was fraudulent. Prater cannot turn a blind eye to the "duties imposed upon him by the Internal Revenue Code." Cheek v. United States, 498 U.S. 192, 206, 111 S. Ct. 604, 613

4

(1991).

The district court did not abuse its discretion by circumscribing Prater's opening statement, his examination of government witnesses, or the documents that he sought to introduce into evidence. The district court ordered Prater before trial to refrain from challenging the legality of income tax laws, and Prater does not challenge the validity of that order. The district court was entitled to enforce its order by prohibiting Prater from arguing, cross-examining agent James Cortier, or admitting evidence about tax laws. See United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir. 1984), abrogated on another ground by Bourjaily v. United States, 483 U.S. 171, 177–79, 107 S. Ct. 2775, 2779–80 (1987); United States v. Baptista-Rodriguez, 17 F.3d 1354, 1366 (11th Cir. 1994). The district court also reasonably prohibited Prater from arguing about his entrapment defense instead of questioning Osa. These limitations enabled the district court to "maintain the pace of the trial" and to control Prater's open defiance of the pre-trial order, and the district court acted even handedly by also limiting questioning and the admission of evidence by the government. Moore v. United States, 598 F.2d 439, 442 (5th Cir. 1979). Moreover, the district court eradicated any potential prejudice to Prater by instructing the jury not to "reflect upon" any objections, motions, or "guidance" provided to Prater and not to allow those rulings to "play any part in

5

[determining] the merits of the case" or in "assess[ing] . . . the evidence." We

presume that the jury complied with that instruction. See United States v. Brazel,

102 F.3d 1120, 1145 (11th Cir. 1997).

The district court also did not abuse its discretion when it denied Prater's

requests for a continuance or for additional resources to prepare for trial. Prater

had six months to examine and prepare a response to discovery delivered by the

government, and Prater does not argue that "additional time to examine the

[discovery materials] would have affected the outcome of his case." United States

v. Perez, 473 F.3d 1147, 1151 (11th Cir. 2006). The district court satisfied

Prater's right of "meaningful access to the courts" by appointing standby counsel

to aid Prater and giving him access to a law library, a resource that Prater used to

prepare numerous pre-trial motions. Lewis v. Casey, 518 U.S. 343, 350–51, 116

S. Ct. 2174, 2179–80 (1996). Prater argues that he was denied subpoenas, but the

district court advised Prater about his right to subpoena witnesses and granted his

request to subpoena Brenda Vicario.

The district court did not err, much less plainly err, in its evidentiary rulings.

The government was entitled to admit evidence about the annual income that

Prater reported to an insurance company and the social security benefits that he

received to prove that Prater was required to file tax returns in 2002 and 2003.

6

The government also was entitled to admit a tape-recorded conversation authenticated by William Bishop during which Prater advocated evading taxes by transferring property using a quitclaim deed, see Fed. R. Evid. 901(a), and to admit documents and testimony from Bibeau to establish that Prater violated the injunction issued by the Texas court, see id. 404(b), 902(4), 903(b)(3). Because Osa was Prater's confidante, Osa could testify that he found credible Prater's statements about concealing $25,000 from the Service by depositing the funds in four different banks. See id. 701. Prater waived any objection to Exhibit 130 by telling the district court that he did "[n]ot really" object to its admission, see United States v. Thayer, 204 F.3d 1352, 1355 (11th Cir. 2000), and the district court eliminated any possible prejudice created by Anderson's testimony about an article disparaging tax avoidance schemes by instructing the jury to consider the article, not for its truth, but to determine Prater's "reaction" and response to its contents, see Brazel, 102 F.3d at 1145.

Prater has failed to establish that the government engaged in any conduct that was prejudicial to Prater's substantial rights. Comments by the government during its opening argument that Prater "falsely claimed" that he could evade tax laws and that he was a "defier of the law" were "merely a characterization of the evidence to be adduced at trial, subject, of course, to the jury's evaluation of the

7

accuracy of the characterization." United States v. Correa-Arroyave, 721 F.2d 792, 795 (11th Cir. 1983). Likewise, remarks by the government during closing statements that the "Judge had told [Prater that] his positions were frivolous" and that Prater "lied intentionally," were supported by the evidence about the ruling of the Texas court and Prater's false statements to the grand jury. Prater argues that the government failed to disclose that his former girlfriend, Margaret Tilus, would testify, but Prater does not argue that his cross-examination or trial strategy would have differed had Tilus been included on the pretrial witness list provided by the government. See United States v. Bagley, 473 U.S. 667, 682–83, 105 S. Ct. 3375, 3383–84 (1985). That the government was admonished not to lead witnesses or seek to admit certain evidence does not equate to misconduct, and the government is not to blame for Bibeau's characterization of Prater's tax program as a "tax scam." Because Prater has failed to identify any individual instances of prosecutorial misconduct, "no cumulative error[] can exist." United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004).

We decline to address Prater's argument that standby counsel was ineffective. Prater complains that counsel "did nothing whatsoever to assist [him]" and he identifies two purported errors by counsel, but "[t]he record is not sufficiently developed for us to decide this claim." United States v. Hill, 643 F.3d

8

807, 879 n.38 (11th Cir. 2011) (applying United States v. Bender, 290 F.3d 1279,

1284 (11th Cir. 2002)). Prater can present his argument in a postconviction

motion. 28 U.S.C. § 2255.

Prater's sentence is procedurally reasonable. Prater was subject to

enhancements for having "organize[d] or l[ed]" a tax avoidance scheme "that

involved five or more participants or was otherwise extensive," United States

Sentencing Guidelines Manual § 3B1.1(a) (Nov. 2009), and having "willfully

obstructed or impeded, or attempted to obstruct or impede," the investigation and

prosecution of his crimes, id., § 3C1.1. Prater's misconduct is extensive: his tax

avoidance scheme involved over 700 clients; he violated an injunction of a Texas

court by continuing to operate his tax avoidance scheme and attempting to conceal

his wrongdoing; he attempted to hide assets for himself and others from the

Service; Prater asked Osa to lie to and prepare fraudulent statements to submit to

the Service; Prater made false statements to a grand jury denying his crimes; Prater

solicited Vicario to testify falsely before the grand jury; and Prater during trial

defied repeatedly an order that prohibited him from challenging the tax laws. In a

telephone call to Vicario from jail, Prater boasted that he was "gonna try to offer

things into evidence" knowing that "the Judge is gonna deny it" then "ask the

same question and . . . ask to offer it as an exhibit . . . just so the jury can hear me

say this 50 times and the Judge say denied."

Prater's sentence also is substantively reasonable. Prater stated falsely at sentencing that he "retired back in 2002," insisted that he had "never seen a law that says [American citizens] have to pay tax on our income," and asserted that he "would probably do the same thing if [he] were a young man again." Based on his statements and conduct at trial, the district court "considered the provisions of 18 U.S.C. § 3553(a)" and reasonably concluded that Prater was a "congenitally predetermined con m[a]n" who, having been arrested previously for insurance and credit card fraud and been dismissive of the injunction entered by the Texas court, required a sentence of imprisonment that would "disable[] [him as much] as possible" from "continu[ing] exactly the same behavior." Presented with an advisory guideline range between 292 and 365 months of imprisonment, the district court reasonably determined that imprisonment for 336 months was necessary "to protect the public from further episodes of [Prater's] malevolence," punish Prater for his crimes, promote respect for the law, and address Prater's unrepentant recidivism. The district court did not abuse its discretion.

We **AFFIRM** Prater's convictions and sentence.

10